IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SANJAY LAMA, | : | No. 3:26-CV-0012 |
| Petitioner | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| J. GREENE, Warden, | : | |
| Respondent | : | |

## MEMORANDUM

Sanjay Lama initiated the above-captioned action by filing a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  He alleges that the Federal Bureau of Prisons (BOP) has improperly calculated his earned time credits under the First Step Act (FSA), Pub. L. 115-391, 132 Stat. 5194 (2018). Specifically, Lama contends that the BOP is using an incorrect start date for calculating his FSA credits.  In a subsequent filing, he claims that the BOP is unlawfully refusing to apply FSA credits he has earned toward time in prerelease custody based on a detainer lodged against him by United States Immigration and Customs Enforcement (ICE).  The court will dismiss Lama's Section 2241 petition for lack of habeas jurisdiction.

## I.    BACKGROUND

Lama is currently serving a 120-month sentence imposed by the United States District Court for the Middle District of Florida for attempted online

enticement of a minor to engage in illegal sexual activity. (See Doc. 12-2 ¶ 3; Doc. 12-3 at 3). His current projected release date, via application of FSA credits and good-conduct time, is April 2, 2027. (See Doc. 12-2 ¶ 3; Doc. 12-3 at 3).

Lama lodged the instant Section 2241 petition in January 2026. (See generally Doc. 1). In his initial petition and memorandum of law, he claims that he should have begun to accrue FSA time credits at the date of his sentencing (July 19, 2021), rather than the date when he arrived at his designated facility of incarceration and completed the FSA risk and needs assessment (September 15, 2021). (See Doc. 2 at 2-3; Doc. 12 at 5 (noting that Lama began earning FSA credits on September 15, 2021, when he first entered a BOP facility)). He maintains that the relevant BOP regulation—28 C.F.R. § 523.42(a)[1]—conflicts with the plain language of the FSA. (Id. at 2). In a later motion to amend his petition, Lama additionally argues that the BOP is unlawfully refusing to apply excess FSA credits he has earned (beyond the 365 credits that have been applied toward early release) to time in prerelease custody due to an existing ICE detainer. (See generally Doc. 7).

---

[1] This regulation provides, in pertinent part, "An eligible inmate begins earning FSA Time Credits after the inmate's term of imprisonment commences (*the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the sentence will be served*)." See 28 C.F.R. § 523.42(a) (emphasis added).

2

As relief, Lama asks the court to find that the at-issue regulation (28 C.F.R. § 523.42(a)) is illegal and to order the BOP to recalculate his FSA time credits using his sentencing date as the accrual date. (See Doc. 2 at 1). In his motion to amend, he asks the court to order the BOP to "immediately release him" to prerelease custody or ICE custody or to grant him bail while his Section 2241 petition is pending. (See Doc. 7 at 1).

Respondent timely answered the Section 2241 petition, addressing both of Lama's habeas claims. (See generally Doc. 12). Lama did not file a traverse. Instead, he filed several motions, including a motion "for extraordinary and programmatic injunctive relief" and a motion "to expedite due to irreparable harm." (See Docs. 17 and 18, respectively). The time to file a traverse has passed, so Lama's Section 2241 petition is ripe for disposition.

## II.   DISCUSSION

Respondent first asserts that Lama's Section 2241 petition should be dismissed because he failed to exhaust administrative remedies. Respondent additionally argues that Lama's first claim fails on the merits and his second claim is barred from review due to lack of habeas jurisdiction.

Because Lama's claims ostensibly involve issues of purely statutory construction, administrative exhaustion is excused. See Vasquez v. Strada, 684 F.3d 431, 433-34 (3d Cir. 2012) (per curiam) (citing Bradshaw v. Carlson, 682

3

F.2d 1050, 1052 (3d Cir. 1981)).  However, because both claims implicate only transfer to prerelease custody (rather than earlier release from prison), there is no habeas jurisdiction for either claim.  And even if the court were to reach the merits of Lama's first claim regarding the FSA-credit accrual date, that claim also fails on the merits.  The court will take each issue in turn.[2]

### A.    No Habeas Jurisdiction for Lama's Petition

Lama has earned 750 FSA time credits, and the BOP has applied 365 of those credits toward early release to supervised release.  (See Doc. 12-5 at 2).  This is the statutory maximum number of FSA credits that can be applied toward early release.  See 18 U.S.C. § 3624(g)(3).  Consequently, both of his habeas claims—which involve either the calculation of his FSA credits or application of those credits—solely implicate placement in *prerelease* custody, not earlier

---

[2] To the extent that Lama raises alternative claims or arguments in his motion for "extraordinary and programmatic" injunctive relief, (Doc. 17), those claims are not properly before this court because they were not raised in his Section 2241 petition, accompanying memorandum of law, or motion to amend.  They are therefore waived.  Cf. Battle v. Garza, No. 1:23-CV-0289, 2023 WL 8373172, at *1 n. 2 (M.D. Pa. Dec. 4, 2023) (explaining that petitioner's claims "raised for the first time in a reply brief [] are waived"); Rush v. Shartle, Civ. No. 13-4788, 2015 WL 5567307, at *2 n.2 (D.N.J. Sept. 22, 2015); Tyler v. Mitchell, 416 F.3d 500, 504 (6th Cir. 2005) (finding that argument first presented in petitioner's "traverse rather than in his habeas petition . . . was not properly before the district court and the district court did not err in declining to address it") (collecting cases); Ryan v. Hendricks, Civ. No. 04–4447, 2014 WL 268578, at *3 n.4 (D.N.J. Jan. 23, 2014) (same); Hayes v. Silvers, Langsam & Weitzman, P.C., 441 F. Supp. 3d 62, 67 n.5 (E.D. Pa. 2020) (argument raised for the first time in reply brief for civil lawsuit is waived); McLendon v. Continental Can Co., 908 F.2d 1171, 1183 (3d Cir. 1990) (argument raised for the first time in reply brief on appeal is waived).

4

release from custody. As such, both claims lack habeas jurisdiction under controlling Third Circuit precedent.

The core of habeas corpus primarily involves a challenge to the fact or duration of confinement. See Preiser v. Rodriguez, 411 U.S. 475, 487-88, 500 (1973). In Woodall v. Federal Bureau of Prisons, 432 F.3d 235 (3d Cir. 2005), the United States Court of Appeals for the Third Circuit held that—in addition to the fact or duration of confinement—a prisoner may also challenge the "execution" of their sentence via a petition under 28 U.S.C. § 2241. See id. at 241-44. In Woodall, the petitioner asserted a challenge to BOP regulations that affected whether he served a portion of his sentence in a federal penal institution or in a "Community Corrections Center" (CCC).[3] See id. at 237.

The Third Circuit agreed with the Second, Sixth, Ninth, and Tenth Circuits and held that habeas jurisdiction lies for prisoners challenging the "manner of their imprisonment," including the place of confinement, when the differences in custody reflect more than a "simple" or "garden variety" prison transfer. See Woodall, 432 F.3d at 242-43. The panel highlighted the significant disparities between carrying out a sentence in a CCC and carrying out a sentence in an

---

[3] The term "Community Corrections Center" is the precursor to what is now referred to by the BOP as a "Residential Reentry Center," sometimes colloquially called a halfway house. See Brown v. Warden Fairton FCI, 617 F. App'x 117, 118 n.1 (3d Cir. 2015) (per curiam) (nonprecedential) ("In 2006, the BOP began referring to 'Community Corrections Centers' as 'Residential Reentry Centers' ('RRCs')[.]").

ordinary penal institution and concluded that the petitioner's claim was a "proper challenge to the 'execution' of his sentence," and thus "habeas jurisdiction lies." Id. at 243-44.

Following Woodall, confusion arose as to what exactly "execution of the sentence" meant for a habeas petitioner. Even the Woodall panel conceded that the precise meaning of this phrase is "hazy." Id. at 242.

In Cardona v. Bledsoe, 681 F.3d 533 (3d Cir. 2012), the court of appeals endeavored to clarify execution-of-sentence habeas challenges in the Third Circuit. The Cardona panel first performed an in-depth review of Woodall and McGee v. Martinez, 627 F.3d 933 (3d Cir. 2010), precedential decisions that had considered execution-of-sentence habeas claims and had determined that the claims presented were cognizable under Section 2241. See Cardona, 681 F.3d at 536-37.

From these decisions, the Cardona panel distilled that the linchpin for habeas jurisdiction for an execution-of-sentence claim was whether the petitioner was challenging the "carrying out" or "put[ting] into effect" of their sentencing order. See id. The reason the petitioners in Woodall and McGee could seek review of the execution of their sentences under Section 2241, the court of appeals explained, was because their petitions "both challenged BOP conduct that conflicted with express statements in the applicable sentencing judgment."

6

Id. at 536.  The Cardona panel thus held, "In order to challenge the execution of [a] sentence under § 2241, [a petitioner] would need to allege that [the] BOP's conduct was somehow inconsistent with a command or recommendation in the sentencing judgment."  Id. at 537.  In that case, the petitioner had not made such an allegation, so the panel found that he was not properly challenging the "execution" of his sentence and therefore the district court had no jurisdiction to consider his Section 2241 petition.  See id. at 537, 538.

The same is true for Lama's petition, as both of his habeas claims concern application of FSA credits toward transfer to prerelease custody.  Yet Lama has not alleged, let alone established, that the BOP's conduct is somehow inconsistent with an express command or recommendation in his sentencing judgment.  Indeed, there is nothing in Lama's sentencing judgment discussing or even alluding to prerelease custody.  See United States v. Lama, No. 3:19-cr-00167, Doc. 191 (M.D. Fla. July 20, 2021).  Accordingly, his petition does not properly challenge the "execution" of his sentence as defined by Cardona v. Bledsoe, so this court has no jurisdiction to consider his habeas claims.  See Cardona, 681 F.3d at 537, 538.

The court is aware that case law within this circuit undoubtedly creates confusion as to habeas jurisdiction for Section 2241 execution-of-sentence claims challenging prerelease custody placement.  Most notably, in Vasquez v.

Strada, 684 F.3d 431 (3d Cir. 2012) (per curiam)—a precedential decision issued just 18 days before Cardona v. Bledsoe—the Third Circuit plainly stated that a prisoner "may resort to federal habeas corpus to challenge a decision to limit his RRC placement." Vasquez, 684 F.3d at 433 (citing Woodall, 432 F.3d at 243-44). In Vasquez, the petitioner was not asserting that a BOP action was inconsistent with a command or recommendation in his sentencing judgment; rather, he claimed that the BOP had failed to comply with the federal prisoner reentry initiative with respect to RRC placement and that the BOP had improperly amended 18 U.S.C. § 3621(b) by adding a sixth factor. See id. Nevertheless, the court of appeals did not find that the Section 2241 petition must be dismissed for lack of jurisdiction based on the substance of the petitioner's habeas claim. Instead, the panel perfunctorily found the petitioner's prerelease custody claim to be cognizable. See id. (citing Woodall, 432 F.3d at 243-44).[4]

Additionally, multiple nonprecedential Third Circuit decisions have stated that challenges to the execution of a sentence involving placement in prerelease

---

[4] Vasquez v. Strada was initially issued on June 1, 2012, as a nonprecedential decision. See Vasquez, No. 12-1114, Doc. 003110916790 (3d Cir. June 1, 2012). Four days later, the government (appellee) moved to designate the decision as precedential under Third Circuit I.O.P. 5.2. See id., Doc. 003110919478 (3d Cir. June 5, 2012). That motion was granted on June 20, 2012, when the opinion was designated as a precedential opinion by the circuit. See id., Doc. 003110933704 (3d Cir. June 20, 2012). It does not appear that the government ever raised a jurisdictional challenge (other than failure to exhaust administrative remedies) to Vasquez's petition with the district court or the court of appeals. See generally Vasquez v. Strada, No. 3:11-cv-01710, Doc. 8 (M.D. Pa. Oct. 17, 2011).

custody are cognizable under Section 2241.  See Brown v. Warden Fairton FCI, 617 F. App'x 117, 118 (3d Cir. 2015) (per curiam) (nonprecedential) ("Brown's challenge to the BOP's failure to transfer him to an RRC lies under § 2241[.]" (citing Woodall, 432 F.3d at 243-44)); Wilson v. Strada, 474 F. App'x 46, 48 (3d Cir. 2012) (per curiam) (nonprecedential) ("Wilson may resort to federal habeas corpus to challenge a decision to limit his RRC placement[.]"(citing Woodall, 432 F.3d at 243-44)); Guess v. Werlinger, 421 F. App'x 215, 217 (3d Cir. 2011) (per curiam) (nonprecedential) (finding that habeas jurisdiction lies for challenge to BOP policy involving prerelease custody placement, concluding that petitioner's challenge "implicates the execution of his sentence" (citing Woodall, 432 F.3d at 243)).  None of these cases involved an allegation that the BOP's conduct was inconsistent with a sentencing command or recommendation, even Brown v. Warden Fairton FCI, which opinion issued three years *after* Cardona v. Bledsoe was decided.  See Brown, 617 F. App'x at 118 (claiming failure to transfer to prerelease custody pursuant to 18 U.S.C. § 3621(b)); Wilson, 474 F. App'x at 47 (raising challenge to BOP's application of Second Chance Act with respect to length of petitioner's RRC placement); Guess, 421 F. App'x at 217 (challenging validity of BOP policy regarding timing of prerelease custody review).  Yet the court of appeals did not find jurisdiction lacking for these petitions based on the substance of the petitioners' claims.

There are, on the other hand, numerous nonprecedential Third Circuit decisions that rely on Cardona v. Bledsoe to find a lack of jurisdiction for certain Section 2241 execution-of-sentence claims, although the court has been unable to locate such a decision that specifically concerns transfer to prerelease custody.  See, e.g., Morgan v. Warden of USP-Allenwood, No. 24-1508, 2025 WL 325753, at *1 (3d Cir. Jan. 29, 2025) (nonprecedential); Reynolds v. Warden Schuylkill FCI, No. 24-1942, 2024 WL 4164271, at *2 (3d Cir. Sept. 12, 2024) (nonprecedential); Moslem v. Warden, F.C.I. Fort Dix, No. 23-2819, 2024 WL 658976, at *1-2 (3d Cir. Feb. 16, 2024) (nonprecedential); Johnson v. Warden Lewisburg USP, 694 F. App'x 59, 59-60 (3d Cir. 2017) (nonprecedential); Johnson v. Warden Lewisburg USP, 668 F. App'x 415, 416-17 (3d Cir. 2016) (nonprecedential); Rinaldi v. Warden Allenwood FCI, 598 F. App'x 809, 809-10 (3d Cir. 2015) (nonprecedential); Gillette v. Territory of Virgin Islands, 563 F. App'x 191, 194-95 (3d Cir. 2014) (nonprecedential); Share v. Krueger, 553 F. App'x 207, 209 (3d Cir. 2014) (nonprecedential); Cardona v. Thompson, 551 F. App'x 630, 632 (3d Cir. 2013) (nonprecedential); Shelton v. Thomas, 537 F. App'x 63, 63-64 (3d Cir. 2013) (nonprecedential); Shelton v. Samuels, 523 F. App'x 177, 177 (3d Cir. 2013) (nonprecedential).  In one case, the petitioner was challenging his confinement on home detention, but the court of appeals explained that a period of home detention was expressly ordered in his judgment

of sentence and therefore he was actually challenging the "*validity* of [his] judgment, not its execution." See Kaetz v. United States, No. 22-1286, 2022 WL 1486775, at *1-2 (3d Cir. May 11, 2022) (nonprecedential).

In light of the seemingly contradictory nature of the foregoing precedential and nonprecedential decisions, it is understandable why a *pro se* petitioner like Lama would attempt to seek relief through Section 2241 for his prerelease custody claims. After all, neither Cardona v. Bledsoe nor its nonprecedential progeny confronted the type of issue presented here: the right to be transferred from a federal correctional institution to prerelease custody based on mandatory language contained in a federal statute.

Nevertheless, this court is bound by Cardona's strict jurisdictional requirements for Section 2241 petitions. Cardona is the latest precedential decision to fully consider and delineate the jurisdictional boundaries of execution-of-sentence claims raised in Section 2241 petitions in this circuit.[5] Under

---

[5] In Romano v. Warden, 779 F. Supp. 3d 498 (D.N.J. 2025) (O'Hearn, J.), the United States District Court for the District of New Jersey reached a similar conclusion regarding Cardona v. Bledsoe's strict jurisdictional limits for execution-of-sentence claims raised in Section 2241 petitions. There, Judge O'Hearn noted that the BOP's sudden revocation of the petitioner's placement on home confinement, which appeared to have been "unfair, unjust, and done without any process," thus raising "serious concerns" for the district court, still could not create habeas jurisdiction where it was lacking. See Romano, 779 F. Supp. 3d at 506 n.11, 508. Judge O'Hearn further explained, however, that "if § 2241 does not provide jurisdiction over placement decisions under Third Circuit law, a petitioner in Mr. Romano's position is left without any forum to vindicate a serious constitutional wrong. In that respect, the Second Circuit's approach, which allows for habeas relief in such circumstances, appears more faithful to the animating principles of the Suspension Clause. Perhaps the Third Circuit will reconsider or modify its approach under the facts of this case." Id. at 506 n.11. The petitioner in Romano v. Warden appealed, see

Cardona's rigid boundaries, Lama's habeas petition is simply not cognizable. The court offers no opinion regarding the availability of other potential avenues of review for Lama's First Step Act claims involving transfer to prerelease custody, only that they cannot be pursued through a petition under 28 U.S.C. § 2241.

## B.    Merits of Claim One: FSA-Credit Accrual Date

Finally, even if the court could consider Lama's primary FSA claim raised in his initial petition, that claim is meritless.

Pursuant to the FSA, the Attorney General was charged with development and release of a Risk and Needs Assessment System (the "System") within 210 days of December 21, 2018, the date on which the FSA was enacted. See 18 U.S.C. § 3632(a). The System is to be used for: (1) determining an inmate's recidivism risk; (2) assessing an inmate's risk of violent or serious misconduct; (3) determining the type and amount of evidence-based recidivism reduction (EBRR) programming appropriate for each inmate; (4) periodically assessing an inmate's recidivism risk; (5) reassigning an inmate to appropriate EBRR programming and productive activities (PAs); (6) determining when to provide incentives and rewards for successful participation in EBRR programming and

---

Romano v. Warden, FCI Fairton, No. 25-1876 (3d Cir. May 8, 2025), but that appeal was dismissed as moot when the petitioner was granted compassionate release, see Romano v. Warden, FCI Fairton, No. 25-1876, 2026 WL 1864858, at *1, *3 (3d Cir. June 29, 2026) (nonprecedential). Until such time as the Third Circuit "reconsider[s] or modif[ies] its approach," this court remains bound by Cardona and its strict jurisdictional limits on execution-of-sentence claims in Section 2241 petitions.

PAs; and (7) determining when the inmate is ready to transfer to prerelease custody or supervised release. Id. Additionally, the System provides guidance on the "type, amount, and intensity of EBRR programs and PAs to be assigned to each inmate based on the inmate's specific criminogenic needs." See Kurti v. White, No. 1:19-cv-2109, 2020 WL 2063871, at *4 (M.D. Pa. Apr. 29, 2020) (citing 18 U.S.C. § 3632(b)).

Under the FSA, an eligible inmate "who *successfully completes* evidence-based recidivism reduction programming or productive activities, shall *earn* time credits" which "shall be applied toward time in prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(A), (C) (emphasis added). More specifically, the FSA allows eligible inmates to earn ten days of time credits for every thirty days of successful participation in EBRR programming or PAs. See id. § 3632(d)(4)(A)(i). If the BOP determines that the inmate is at a minimum or low risk of recidivism and has not increased their recidivism risk over two consecutive assessments, the inmate can earn an additional five days of time credits for every thirty days of successful participation in EBRR programming or PAs (for a total of fifteen days of time credits for every thirty days of programming). See id. § 3632(d)(4)(A)(ii).

An inmate cannot earn time credits for successfully completed programming prior to the FSA's enactment on December 21, 2018, or "during

13

official detention prior to the date the prisoner's sentence commences under [18 U.S.C. §] 3585(a)." See id. § 3632(d)(4)(B). In Section 3585(a), Congress clarified that "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." See id. § 3585(a).

Lama posits that he should have started accruing FSA time credits at the date of his sentencing rather than when he was first committed to a BOP facility approximately two months later. Even if the court had jurisdiction to entertain this claim, it fails on the merits. While the court agrees that Lama was indeed *eligible* to earn FSA time credits following his sentencing on July 19, 2021, he has not established that he in fact participated in EBRR programming or PAs during the disputed period and thus *earned* any credits during that time.

Initially, the court observes that 18 U.S.C. § 3585(a) controls when a sentence "commences" for purposes of the FSA. The FSA, in Section 3632(d)(4)(B)(ii), specifically incorporates Section 3585(a) as defining when a "prisoner's sentence commences" for purposes of FSA eligibility to earn time credits. See 18 U.S.C. § 3632(d)(4)(B)(ii). Thus, because Section 3585(a) is expressly incorporated into the FSA, that statutory provision controls when a

14

sentence "commences" and cannot be overridden by a contrary regulation (*e.g.*, 28 C.F.R. § 523.42(a)) or policy.

Yet simply because an inmate is eligible to earn FSA time credits does not mean that those credits are automatically awarded. Rather, FSA time credits must be "earned" by successfully participating in EBRR programming or PAs. See 18 U.S.C. § 3632(d)(4)(A), (d)(4)(C); McDaniel v. Gunther, No. 25-cv-00968, 2026 WL 782966, at *5-6 (D. Ariz. Feb. 13, 2026), report & recommendation adopted, 2026 WL 777642 (D. Ariz. Mar. 19, 2026); Stevens v. Jacquez, No. 3:23-cv-01482, 2024 WL 3200546, at *4 (D. Or. June 25, 2024). Moreover, the FSA requires that each prisoner be assessed to "determine the type and amount of evidence-based recidivism reduction programming that is appropriate" to that specific prisoner. 18 U.S.C. § 3632(a)(3). Only then can the BOP assign specific programming to the inmate. See id. A prisoner is not instantaneously assessed under the System at the time of sentencing, nor does the FSA mandate instantaneous assessment.

Therefore, as similarly held in Akhatsegbe v. Greene, No. 1:24-cv-01871, 2025 WL 297699, at *4 (M.D. Pa. Jan. 24, 2025) (Kane, J.), aff'd sub nom. Akhatsegbe v. Warden Allenwood FCI, No. 25-1239, 2025 WL 2658991 (3d Cir. Sept. 17, 2025) (per curiam) (nonprecedential), the court need not resolve Lama's statutory challenge. That is because Lama has not provided *any*

15

evidence that he successfully participated in EBRR programming or PAs during the 58 days in dispute or was otherwise entitled to receive FSA credits during that time,[6] so he has not established that his current FSA calculations are incorrect.  See id.; see also Vargas v. Warden of FCI-Allenwood, No. 1:25-cv-2328, 2026 WL 1090610, at *4 (M.D. Pa. Apr. 22, 2026) (Neary, J.) (denying habeas claim and explaining that "regardless of whether [28 C.F.R. § 523.42(a)] conflicts with [18 U.S.C. § 3585(a)], Vargas has not shown that he completed any programs during the relevant three-month period between the date of his sentencing and his arrival in a federal prison"); Patel v. Greene, No. 3:25-cv-2483, 2026 WL 907589, at *2 (M.D. Pa. Apr. 2, 2026) (Mariani, J.) ("Because the uncontroverted record confirms that Patel began earning FSA time credits when he arrived at LSCI-Allenwood (his designated facility) on November 10, 2025, and did not participate in any programming at a BOP facility before that date, the habeas petition must be denied.").  Lama is not entitled to the award of FSA time credits beginning on his sentencing date "simply because he was sentenced and in federal custody as of that date."  Akhatsegbe, No. 1:24-cv-01871, 2025 WL 297699, at *4 (quoting Stevens, No. 3:23-cv-01482, 2024 WL 3200546, at *4).

---

[6] Lama merely alleges, in conclusory fashion, that he "was either participating in FSA eligible programs after his sentencing, or was on the waitlist for them, or was being transferred to FCI Allenwood Low from his previous facility."  (Doc. 2 at 2).  These vague, in-the-alternative allegations are wholly insufficient to establish that Lama earned FSA time credits during the 58 days in dispute and therefore the BOP miscalculated his total number of time credits.

16

Moreover, Lama's case is easily distinguishable from HuiHui v. Derr, No. 22-cv-00541, 2023 WL 4086073 (D. Haw. June 20, 2023), one of the district court cases upon which Lama primarily relies. In HuiHui, the petitioner had been housed in a federal facility for nearly two years prior to sentencing and had not been allowed to earn FSA time credits for almost seven months after her sentencing. See id., at *1, *7. Lama, on the contrary, waited less than two months after his sentencing before he reached his designated facility, received his FSA risk and needs assessment, and began earning FSA time credits.

In this regard, the case at bar is likewise distinguishable from Heath v. Knight, No. 22-cv-07270, 2024 WL 5198863 (D.N.J. Dec. 23, 2024), another district court decision Lama frequently cites to support his claim. In Heath, the petitioner waited seven months before reaching his designated facility, during which time he completed "as many Productive Activities as he possibly could." Id., at *1.

Not so with Lama. Here, like in Akhatsegbe, Vargas, and Patel, Lama has not proffered evidence that he in fact earned (or was otherwise entitled to) any FSA credits during the 58 days at issue. Therefore, he has not demonstrated that the BOP incorrectly calculated his FSA time credits. Consequently, even if this court had jurisdiction to consider his initial FSA claim, that claim would be

17

denied.  See Akhatsegbe, No. 25-1239, 2025 WL 2658991, at *1 (3d Cir. Sept. 17, 2025).

## III.    CONCLUSION

Under Cardona v. Bledsoe, 681 F.3d 533 (3d Cir. 2012), execution-of-sentence habeas claims in the Third Circuit are tightly circumscribed.  Lama's Section 2241 petition, which challenges the BOP's failure to transfer him to prerelease custody—but *does not* allege that the BOP's conduct is somehow inconsistent with a command or recommendation in his sentencing judgment—fails to meet the stringent jurisdictional requirements set forth in Cardona. Accordingly, Lama's Section 2241 petition must be dismissed for lack of habeas jurisdiction.  An appropriate Order follows.

Date: 7/23/26

BY THE COURT:

_____
JUDGE JULIA K. MUNLEY
United States District Court

18